ORIGINAL

Approved: _MADISON REDDICK SMYSER_
MADISON REDDICK SMYSER
Assistant United States Attorney

**22 Mag. 5818**

Before: HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

------------------------------------ X
:   COMPLAINT
UNITED STATES OF AMERICA                :
:   Violations of 18 U.S.C.
            -v.-                        :   §§ 922(a)(1)(A),
:   924(a)(1)(D), 924(n),
BRANDY ARIAS,                           :   and 2.
:
            Defendant.                  :   COUNTY OF OFFENSE:
:   BRONX
------------------------------------ X

SOUTHERN DISTRICT OF NEW YORK, ss.:

TATIANA BIESS, being duly sworn, deposes and says that she is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

COUNT ONE
(Firearms Trafficking)

1. From at least in or about March 2022 up to and including at least in or about July 2022, in the Southern District of New York and elsewhere, BRANDY ARIAS, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business did ship, transport, and receive firearms in interstate and foreign commerce, to wit, ARIAS illegally sold firearms in the Bronx, New York.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), and 2.)

COUNT TWO
(Interstate Travel With Intent to Engage in Firearms Trafficking)

2. From at least in or about June 2022 up to and including at least in or about July 2022, in the Southern District of New York and elsewhere, BRANDY ARIAS, the defendant, with the intent to engage in conduct that constitutes a violation of Title 18, United States Code, Section 922(a)(1)(A), unlawfully, willingly, and knowingly traveled from one state into another state and acquired, and attempted to acquire, a firearm in such other state in furtherance of such purpose, to wit, ARIAS traveled between New York and Florida for the purpose of acquiring firearms, with the intent that the firearms be illegally resold in New York.

(Title 18, United States Code, Sections 924(n) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports, recordings, photographs, communications, and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Since in or about March 2022, the ATF has been investigating BRANDY ARIAS, the defendant, for firearms trafficking. Specifically, over the course of eight transactions from in or about March 2022 through in or about July 2022, ARIAS sold an undercover law enforcement officer (the "UC") twenty firearms, as well as ammunition and magazines.

### The March 23, 2022 Buy

5. Based on my conversations with the UC and other law enforcement officers, my review of law enforcement reports, my review of visual and audio recordings, and my participation in surveillance, I have learned, among other things, the following:

    a. On or about March 23, 2022, the UC arranged to

meet with an individual later identified as BRANDY ARIAS, the defendant, near a residential building (the "Building") in the vicinity of Beach Avenue in the Bronx, New York, to purchase firearms.

        b.    At approximately 12:03 p.m. that day, the UC arrived near the Building and called ARIAS. Shortly thereafter, law enforcement officers observed ARIAS exit the Building carrying a white bag and enter the UC's vehicle.

        c.    During the meeting inside the vehicle, ARIAS gave the white bag to the UC and stated, in sum and substance, "You can look at it if you want. This is the Glock 17." The UC inspected the firearm that was inside the white bag and gave ARIAS approximately $1,400.

        d.    ARIAS began looking through her cellphone and told the UC, "He told me to show you the . . ." ARIAS then showed the UC a photograph of a second firearm on her cellphone and stated, "Same thing. It's a 45[,]" referring to the price and caliber of the second firearm. ARIAS told the UC, in sum and substance, that she had the second firearm in her home. The UC agreed to purchase the second firearm, as well as approximately 100 rounds of ammunition, for approximately $1,200.

        e.    ARIAS then left the UC's vehicle. Shortly thereafter, ARIAS reentered the UC's vehicle with a shopping bag. Inside the vehicle, ARIAS handed the UC the second firearm, which the UC inspected. The UC gave ARIAS approximately $1,200 for the second firearm and ammunition.

        f.    ARIAS and the UC then discussed, in sum and substance, future firearms transactions. ARIAS identified herself as "Brandy." ARIAS also stated, in sum and substance, that she comes back to New York with about five firearms at a time.

      6.    Based on my review of a photograph of BRANDY ARIAS, the defendant, maintained on a law enforcement database, my review of body camera footage featuring ARIAS from a February 2022 incident, my review of an identification document for ARIAS, and my observations from the March 23, 2022 meeting, during which I conducted surveillance and saw the individual who sold firearms, I believe that ARIAS is the individual who sold the UC two firearms during the March 23, 2022 meeting.

### The May 2, 2022 Buy

      7.    Based on my conversations with the UC and other law

enforcement officers, my review of law enforcement reports, my review of visual and audio recordings, and my participation in surveillance, I have learned, among other things, the following:

    a. On or about April 16, 2022, the UC had a recorded telephone conversation with BRANDY ARIAS, the defendant, in which they discussed, in sum and substance, the firearms that ARIAS had available for sale. ARIAS told the UC, in sum and substance, that she would have something to sell the UC the following week.

    b. On or about May 2, 2022, the UC arranged to meet ARIAS near a fast-food restaurant (the "Restaurant") in the vicinity of Bruckner Boulevard in the Bronx, New York, to purchase firearms.

    c. At approximately 12:13 p.m. that day, the UC called ARIAS to let her know that the UC was parked near the Restaurant. Shortly thereafter, ARIAS entered the UC's car. Inside the car, ARIAS handed the UC a blue fanny pack containing two firearms and ammunition. After inspecting the firearms, the UC gave ARIAS approximately $1,850 to purchase the firearms and ammunition, and ARIAS exited the car.

### The May 24, 2022 Buy

8. Based on my conversations with the UC and other law enforcement officers, my review of law enforcement reports, my review of visual and audio recordings, and my participation in surveillance, I have learned, among other things, the following:

    a. On or about May 24, 2022, the UC arranged to meet with BRANDY ARIAS, the defendant, near the Restaurant to purchase firearms.

    b. At approximately 4:26 p.m. that day, ARIAS entered the UC's vehicle, which was parked near the Restaurant. Inside the vehicle, ARIAS handed the UC a firearm wrapped in a gray shirt, as well as a clear Ziplock bag containing ammunition. The UC inspected the firearm and paid ARIAS approximately $900. The UC and ARIAS then discussed, in sum and substance, future firearms transactions before ARIAS exited the vehicle.

### The May 26, 2022 Buy

9. Based on my conversations with the UC and other law enforcement officers, my review of law enforcement reports my review of visual and audio recordings, and my participation in

surveillance, I have learned, among other things, the following:

   a.   On or about May 24, 2022, the UC arranged to meet with BRANDY ARIAS, the defendant, near the Restaurant to purchase firearms.

   b.   At approximately 6:55 p.m. that day, ARIAS entered the UC's vehicle, which was parked near the Restaurant. ARIAS handed the UC a paper bag containing a firearm and ammunition. The UC inspected the firearm and gave ARIAS approximately $1,300 for the firearm and ammunition. ARIAS then exited the vehicle.

### The June 8, 2022 Buy

   10.   Based on my conversations with the UC and other law enforcement officers, my review of law enforcement reports, and my review of communications between the UC and BRANDY ARIAS, the defendant, I have learned that between June 4, 2022, and June 9, 2022, the UC and ARIAS exchanged approximately eleven phone calls and more than 30 text messages regarding future firearm transactions. These included the following:

   a.   On or about June 4, 2022, the UC received a text message from ARIAS, stating, "Hey got something nice." The UC then called ARIAS. During the recorded call, ARIAS told the UC, in sum and substance, that she had three or possibly four firearms that she could sell the UC in the coming days. Later that night, ARIAS texted the UC to inform the UC of the price for the firearms.

   b.   On or about June 6, 2022, the UC received a text message from ARIAS that stated, "Yo we have a change of plans." The UC then called ARIAS. During that recorded phone call, ARIAS told the UC, in sum and substance, that she had sold the firearms they had previously discussed but she had new firearms to sell to the UC. ARIAS then texted the UC photographs of four firearms.

   c.   On or about June 7, 2022, the UC received a call from ARIAS. During this recorded phone call, ARIAS told the UC, in sum and substance, the price of the firearms. They agreed to meet the next day to consummate the sale. Later that day, ARIAS called the UC to discuss ammunition that she planned to bring to the sale.

   11.   Based on my conversations with the UC and other law enforcement officers, my review of law enforcement reports, my

review of visual and audio recordings, and my participation in surveillance, I have learned, among other things, the following:

        a. On or about June 8, 2022, at approximately 12:26 p.m., BRANDY ARIAS, the defendant, arrived at a pre-determined meeting place in the vicinity of East Tremont Avenue in the Bronx, New York to sell firearms and ammunition to the UC.

        b. When ARIAS arrived at the location, she entered the UC's vehicle. Inside the vehicle, ARIAS handed the UC a red cardboard shoe box containing three firearms and removed a fourth firearm from her backpack. ARIAS used a towel to clean the fourth firearm and told the UC, in sum and substance, that she did not want her fingerprints to be on the firearm. ARIAS also gave the UC ammunition and magazines. The UC inspected the firearms and gave ARIAS approximately $4,240 for the firearms, ammunition, and magazines. ARIAS then exited the vehicle.

    12. Based on my review of records from the ATF, I know that one of the firearms that the UC purchased from BRANDY ARIAS, the defendant, on or about June 8, 2022, was purchased in Florida approximately 27 days earlier.

    13. Based on my review of records from a particular bus company (the "Bus Company"), I learned that on or about June 6, 2022, a person named "Brandy Arias" purchased a bus ticket from Orlando, Florida, departing on or about June 6, 2022 and arriving at a location in the vicinity of Allen Street in New York, New York on or about June 7, 2022 at approximately 9:40 a.m.

    14. Based on my review of surveillance footage from a business (the "Business") near the Bus Company's drop-off location in the vicinity of Allen Street in New York, New York, I observed that at approximately 9:41 a.m. on June 7, 2022, a bus passed by the Business, and approximately three minutes later, BRANDY ARIAS, the defendant, can be seen standing at the spot where the bus had passed.[1]

### The June 13, 2022 Buy

    15. Based on my conversations with the UC and other law enforcement officers, my review of law enforcement reports, my

---

[1] The time stamp on the surveillance footage reads 9:35 a.m. Based on my comparison of the time displayed by the Business's DVR and the time displayed on my government-issued cellphone at the time I collected the surveillance video, I know that the Business's surveillance video time stamps are six minutes slow.

6

review of visual and audio recordings, my review of communications between the UC and BRANDY ARIAS, the defendant, and my participation in surveillance, I have learned, among other things, the following:

  a. On or about June 11, 2022, the UC had a recorded telephone conversation with ARIAS in which they discussed, in sum and substance, the firearms that ARIAS had available for sale. ARIAS then texted the UC photographs of four firearms.

  b. On or about June 12, 2022, ARIAS texted the UC, explaining that she no longer had one of the firearms she had discussed with the UC.

  c. Later that day, the UC called ARIAS to discuss the sale. During the recorded call, ARIAS explained what "switches" are and how to install them. Based on my training and experience, I know that "switches" are devices that can be used to easily convert a semi-automatic weapon to a fully automatic weapon. ARIAS and the UC agreed to meet the next day and to speak more in person.

  d. On or about June 13, 2022, at approximately 3:00 p.m., ARIAS entered the UC's vehicle, which was parked near the Restaurant. Inside the vehicle, ARIAS showed the UC three firearms, ammunition, and magazines. ARIAS told the UC, in sum and substance, that she had unboxed the firearms herself. She also offered to sell the UC a "switch" for $800. The UC then inspected the firearms and gave ARIAS approximately $3,650 for the three firearms, ammunition, and magazines. They discussed, in sum and substance, future firearms transactions before ARIAS left the vehicle.

  16. Based on my review of records from the ATF, I know that one of the firearms that the UC purchased from ARIAS on or about June 13, 2022, was purchased in Florida approximately four days earlier.

### The June 28, 2022 Buy

  17. Based on my conversations with the UC and other law enforcement officers, my review of law enforcement reports, my review of visual and audio recordings, and my participation in surveillance, I have learned, among other things, the following:

  a. On or about June 28, 2022, the UC arranged to meet with BRANDY ARIAS, the defendant, near the Restaurant to

7

purchase firearms.

  b. At approximately 11:20 a.m. on that day, the UC and ARIAS met inside the UC's vehicle, which was parked near the Restaurant. Inside the vehicle, ARIAS gave the UC four firearms, which the UC inspected, along with ammunition and magazines. The UC paid ARIAS approximately $5,725 for the firearms, ammunition, and magazines. ARIAS then left the vehicle.

### The July 14, 2022 Buy and Arrest

  18. Based on my review of records from the Bus Company, I learned that a person named "Brandy Arias" was scheduled to travel on a bus departing from a location in the vicinity of Canal Street in New York, New York on or about July 8, 2022 at approximately 6:45 p.m. and arriving in Orlando, Florida on or about July 9, 2022 at approximately 2:00 p.m.

  19. Based on my conversations with law enforcement officers who conducted surveillance at a Bus Company pick-up location in the vicinity of Canal Street in New York, New York on or about July 8, 2022, I know that at approximately 6:47 p.m. that evening, an individual who appeared to be BRANDY ARIAS, the defendant, boarded a bus, which left shortly thereafter.

  20. Based on my conversations with the UC and other law enforcement officers, my review of visual and audio recordings, and my participation in surveillance and the arrest of BRANDY ARIAS, the defendant, I have learned, among other things, the following:

  a. The UC arranged to meet with BRANDY ARIAS, the defendant, near the Restaurant on or about July 14, 2022, to purchase firearms.

  b. At approximately 12:10 p.m. on that day, the UC and ARIAS met inside the UC's vehicle, which was parked near the Restaurant. Inside the vehicle, ARIAS gave the UC three firearms, four standard magazines, one extended magazine, one drum magazine, and ammunition. The UC paid ARIAS approximately $5,800 for these items. Law enforcement then arrested ARIAS.

  21. Based on my review of searches of an ATF database, I know that from at least in or about March 2022 through in or about July 2022, BRANDY ARIAS, the defendant, was not a licensed firearm dealer, importer, or manufacturer.

WHEREFORE, deponent respectfully requests that BRANDY ARIAS, the defendant, be imprisoned or bailed, as the case may be.

_____
TATIANA BIESS
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me this
___ day of July, 2022

_____
HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK